NOT DESIGNATED FOR PUBLICATION

No. 128,082

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARTIN MILLER,
*Appellant*,

v.

DONALD LANGFORD, ECF WARDEN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; STEVEN JOHNSON, judge. Submitted without oral argument. Opinion filed August 29, 2025. Affirmed.

*Bradley T. Steen*, of Law Office of B. Truman Steen, LLC, of Salina, for appellant.

*Christine M. Tortorice*, legal counsel, Kansas Department of Corrections, for appellee.

Before ISHERWOOD, P.J., SCHROEDER and PICKERING, JJ.

PER CURIAM: Martin Miller petitioned the district court under K.S.A. 60-1501 to challenge the Ellsworth Correctional Facility (ECF)'s ban on roleplaying games as an infringement upon his constitutional rights of free speech and association. The district court summarily denied his petition for failure to state a claim. Our review of the record failed to yield any indication that this conclusion was erroneous. Accordingly, the decision of the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2022, Donald Langford, the Warden at ECF, signed a general order that allowed inmates to play "'Table/Board games'" during their recreation and leisure time in the dayroom. However, at some point, staff and officers informed inmate Miller that inmates engaging in roleplaying games risked being written up as a security threat. Miller drafted a letter to Langford requesting clarification because no rule specifically stated that roleplaying games were prohibited. He also requested a one-year trial period that allowed roleplaying games in the dayroom so he could demonstrate the games did not pose a safety or security threat.

Miller received no response, but ECF eventually posted new dayroom rules, one of which prohibited roleplaying games. Miller submitted an inmate grievance form and noted that prior to 2018 the KDOC's central office concluded that roleplaying games did not present a safety concern. He then sent a Form-9 request to ECF Policy and Compliance Officer Carolyn Graves to inquire why the policy changed. She informed him that "[a]t any point in time, if any practice or procedure causes concern for the safety and security of our residents, staff, and facility, we can make administrative decisions to prevent them." Miller followed up with a second letter to determine whether there were any documented safety or security incidents attributable to roleplaying games and, if so, he wanted a copy of the reports. Graves responded there were no recorded occurrences because the activity was expressly disallowed and Miller's request for documentation was too broad in its scope. Miller then directed an inquiry to Classification Administrator Terry Chaput and asked why a ban was instituted on roleplaying games. Chaput clarified that the games were never allowed.

In October 2023, Miller commenced a formal grievance process. He outlined facts about roleplaying games and highlighted how the inmate population might benefit from them. Miller also identified what he perceived to be inconsistencies in the policy, noting

that the facility permitted inmates to watch "Dungeons & Dragons: Honor Among Thieves" but refused to allow them to participate in the game of the same name. Miller also argued that chess, Sorry!, dominoes, and cards constituted a form of roleplay given their use of strategy, yet they were not excluded from the dayroom. Miller's unit team counselor responded that while roleplaying games were not authorized, inmates could purchase books about them to discuss them with other inmates.

Miller appealed this conclusion to Warden Langford who reaffirmed that the continued safety and security of the facility, staff, and residents necessitated the prohibition. Miller soldiered on and appealed to the Secretary of Corrections. The Secretary's designee, Darcie Holthaus, responded that the warden is responsible for the implementation of general orders to ensure the safety and security of the facility and he determined that roleplaying games posed too great a risk. Holthaus' denial marked the exhaustion of Miller's administrative remedies.

Miller petitioned the Ellsworth County District Court for habeas relief under K.S.A. 60-1501 and argued that the exclusion of roleplaying games was an unreasonable restriction on his constitutional rights. The district court noted that the threshold requirement for obtaining a writ was the perpetration of shocking and intolerable conduct or continuing mistreatment of a constitutional magnitude, and a ban on roleplaying games fell well short of the threshold. The judge observed that since the conduct of the correctional facility was neither shocking nor intolerable, Miller tried "to take it to a constitution[al] denial of substantive due process under the 1st and 14th amendments [to the United States Constitution]." The district court concluded that Miller failed to offer any legal authority to substantiate his claim that a ban on roleplaying games implicated the First Amendment.

Miller now brings his case before this court for a determination of whether the district court reached its conclusion in error.

LEGAL ANALYSIS

*The prohibition on roleplaying games is not an infringement upon a constitutional right.*

Miller argues that roleplaying games implicate speech interests, and to buttress this contention, he highlights the conversing and note-writing components required by several of the games. He further notes that when inmates congregate to enjoy this shared interest together it involves the freedom of association under the First Amendment. Langford counters that the act of playing a game is not a constitutionally protected activity and Miller remains free to express his opinions and write about roleplaying games. Further, inmates may meet to discuss their shared interests, but their freedom of association does not require that they be permitted to play a particular type of game together.

*Standard of review*

To state a claim for relief under K.S.A. 60-1501 and avoid summary dismissal, a petition must allege "'shocking and intolerable conduct or continuing mistreatment of a constitutional stature.'" *Denney v. Norwood*, 315 Kan. 163, 173, 505 P.3d 730 (2022). "But if it is apparent from the petition and attached exhibits that the petitioner is entitled to no relief, then no cause for granting a writ exists and the court must dismiss the petition." 315 Kan. at 173; see K.S.A. 2024 Supp. 60-1503(a). An appellate court exercises de novo review of a district court's summary dismissal of the petition. 315 Kan. at 175.

> "[E]very man shall have a right to speak, write, and print his opinions upon any subject whatsoever, without any prior restraint, so always that he does not injure any other person in his rights, person, property, or reputation; and so always that he does not thereby disturb the public peace, or attempt to subvert the government." *Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 733, 51 S. Ct. 625, 75 L. Ed. 1357 (1931).

4

"Prison officials are charged with the control and administration of the penal institutions of the state and as such are vested with wide discretion in the discharge of their duties." *Adkerson v. Nelson*, 25 Kan. App. 2d 655, 657, 967 P.2d 357 (1998). Accordingly, we afford those regulations great deference on review. See 25 Kan. App. 2d at 657.

Miller does not take the position that a warden violates the rights of inmates by allowing chess but banning checkers or permitting spades but banning solitaire. Both parties seemingly acknowledge that federal and state authorities generally support the notion that wardens necessarily have the power to prohibit some recreation while allowing others. See *Schnetz v. Ohio Dept. of Rehabilitation and Correction*, 195 Ohio App. 3d 207, 210, 959 N.E.2d 554 (2011). Miller simply contends that roleplaying games must be analyzed through a different lens because they are uniquely impervious to restriction given the speech related skills required of the participants.

Thus, the key issue is the proper classification of roleplaying games. If such activities constitute a form of speech, then they are generally protected. Sentenced prisoners cannot be deprived of their freedom of speech and religion under the First and Fourteenth Amendments. *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); see also *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987) ("Inmates clearly retain protections afforded by the First Amendment."). But that privilege must be balanced against the legitimate interest that secure facilities housing prisoners or dangerous civilly committed patients have in preserving discipline and security. Maintaining that order may entail placing limitations upon its residents' constitutional rights. *Chubb v. Sullivan*, 50 Kan. App. 2d 419, 425, 330 P.3d 423 (2014).

In *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), the United States Supreme Court established a four-part formula for balancing a prison's

legitimate interests in safety against the prisoners' retained constitutional rights. A prison regulation that restricts an inmate's First Amendment activities is valid if it is rationally related to a legitimate penological goal or purpose. This threshold requirement is the first step in what has come to be known as the *Turner* test. Once that threshold is met, appellate courts assess the reasonableness of a regulation through application of the following factors: whether the prison inmates have other means by which to exercise the right available; the impact that accommodating the asserted constitutional right would have on the dynamic between guards and inmates, as well as upon the allocation of the prison's finite resources; and whether there is an absence of ready alternatives to the regulation. *Rice v. State*, 278 Kan. 309, 321, 95 P.3d 994 (2004).

Miller's K.S.A. 60-1501 petition compelled the district court to contemplate two questions in succession. The first issue it must resolve is whether an individual's participation in a roleplaying game is properly classified as an act of speech. If the answer to that question is an affirmative one, the district court must then ascertain whether the restriction that the correctional institution placed upon the pastime passes the *Turner* test as a valid restriction on an inmate's First Amendment activities. But Miller skipped the first question entirely. His petition jumped straight to the application of the *Turner* test, thereby assuming into existence the fact that the roleplaying games constitute speech. Yet, he does not cite any court's opinion from any jurisdiction that the act of engaging in a roleplaying game constitutes speech.

On appeal, while he notes that the mechanics of a roleplaying game involve players conversing and writing notes, he remains unable to offer any on-point legal authority which states that those activities are properly considered speech that is protected by the First Amendment. To date, no court has held that a prohibition on playing these games infringes a First Amendment right, either of speech or of association. Miller's arguments are unsupported.

The district court correctly found that playing a game in the dayroom is not an act of speech or free association. If it were, then the district court would have been required to apply the four-part test from *Turner* to determine whether the regulation was a reasonable restriction of a First Amendment right. The record before us does not include any indication that the district court erred in arriving at its conclusion. Accordingly, the summary denial of Miller's petition is affirmed.

Affirmed.